# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2853

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the Northern |
| | *   District of Iowa. |
| Jerold Exson, | * |
| | * |
| Defendant-Appellant. | * |

_____

Submitted: March 10, 2003
Filed: May 12, 2003

_____

Before WOLLMAN, RICHARD S. ARNOLD, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Jerold Exson was convicted by a jury of distributing five grams or more of crack cocaine within 1000 feet of a private college and pled guilty to a second charge of failure to appear. Exson filed a post trial motion, and the district court[1] concluded that the government had not established that his drug offense occurred within 1000 feet of Coe College and sentenced him to 121 months on the lesser included charge

_____

[1] The Honorable Charles R. Wolle, United States District Judge for the Northern District of Iowa.

of distribution of crack cocaine and an additional 3 months to run consecutively for failure to appear. Exson appeals his conviction and sentence. We affirm.

Special Agent Brugman, a narcotics officer working undercover, contacted Deb Jirouch on October 7, 1998 to set up another crack purchase. Jirouch arranged to meet her source at a Cedar Rapids intersection near Coe College, and Brugman drove her there. She told Brugman that the source for the crack would be driving a gray car and had supplied the drugs for three of their earlier transactions. Agents saw Exson arrive at the intersection in a gray car, and Jirouch told Brugman that he was her source and that Brugman should wait around the corner at Wendy's while she met with him. Brugman gave Jirouch $1000 in cash, and she left. After a few minutes agents saw Jirouch get out of Exson's car at the spot where Brugman had parked. When Brugman returned to his car, Jirouch gave him his crack and showed him another small piece she had obtained from Exson. Laboratory analysis done on Brugman's purchase identified it as 7.11 grams of crack cocaine.

The United States filed an indictment on May 18, 2000, charging Exson with distribution of 7.11 grams of cocaine base within 1000 feet of a private college in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 860. Exson was arraigned and released on May 30, 2000. He absconded from pretrial release on November 20, 2000, and was arrested almost a year later on October 31, 2001. On January 11, 2002, a superseding indictment was filed charging Exson with the additional crime of failure to appear in court in violation of 18 U.S.C. § 3146(a)(1). The original charge was also amended to include allegations that he had aided and abetted the distribution of crack cocaine and that he had previously been convicted of a felony drug charge.

Exson filed pro se motions to dismiss the indictment and to request new counsel. He claimed his attorney had kept information from him, refused to file motions to dismiss or suppress, and failed to develop a trial strategy. The district

court considered Exson's issues at the arraignment on the superseding indictment on January 28, 2002 and denied the request for new counsel, stating that Exson's attorney had served him well and that his refusal to file meritless motions was not grounds for removal. Exson filed a renewed motion for counsel on February 11, 2002, claiming conflict of interest because his attorney had previously represented one of the government's witnesses and because Exson had himself filed a civil suit against his attorney. Defense counsel also filed a motion to withdraw, and the court denied both motions but gave Exson another chance to discuss his dissatisfaction with counsel at a status hearing on February 26. On March 13, 2002, Exson filed a pro se motion to dismiss the indictment, claiming that the prosecution had misled the grand jury. The court heard argument and denied the motion at a hearing on April 1, 2002.

Exson pled guilty to the failure to appear charge and went to trial on the remaining charge. Agent Brugman testified about his crack purchase on October 7, 1998 and about earlier drug transactions where he had taken Jirouch to obtain crack from Exson. Jirouch testified that she had purchased crack cocaine from Exson for her own use and to sell to others for about two years before she arranged the purchases from him for Brugman.

The jury found Exson guilty of distributing more than five grams of crack cocaine within 1000 feet of a private college. Exson filed a post trial motion for judgment of acquittal and for a new trial. The court granted his motion for judgment of acquittal on the greater offense of distribution of crack cocaine within 1000 feet of Coe College, finding insufficient evidence that the transaction had occurred within that distance. It denied his motion in respect to the underlying distribution offense and found Exson responsible for 22.06 grams of crack cocaine. Exson was sentenced to 121 months for distribution of crack and a consecutive term of 3 months for failure to appear.

Exson contends on appeal that the district court abused its discretion in denying his motions for new counsel and erred in denying his motion to dismiss the indictment. He also argues that there was insufficient evidence to support his drug conviction and that the district court abused its discretion by admitting coconspirator evidence and erred in calculating drug quantity. He seeks acquittal or a new trial.

Exson argues that the district court should have granted his motion to dismiss the indictment because the prosecution misled the grand jury by making it appear that a government agent had made the purchase from Exson instead of Jirouch, a drug addict and dealer. He contends that this bolstered the reliability of the report about the transaction. The government responds that the grand jury was not misled and that the purchase from Exson was a controlled transaction, that the relief of dismissal would only be appropriate if actual prejudice were shown and none is, and that even if there had been error it would be harmless because the trial jury later convicted Exson beyond a reasonable doubt.

The proceedings of a grand jury are afforded a strong presumption of regularity, and a defendant faces a heavy burden to overcome that presumption when seeking dismissal of an indictment. See United States v. Hintzman, 806 F.2d 840, 843 (8th Cir. 1986). Dismissal due to errors in grand jury proceedings is appropriate only if the defendant shows actual prejudice, see United States v. Kouba, 822 F.2d 768, 774 (8th Cir. 1987), and "the petit jury's guilty verdict rendered [any] errors harmless." Id. The guilty verdict means that Exson was "guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." United States v. Mechanik, 475 U.S. 66, 70 (1986). The district court did not err in denying Exson's motion to dismiss the indictment because of the grand jury proceedings.

Exson argues that there was insufficient evidence to support the guilty verdict. He contends that the only evidence that Exson had provided Jirouch with crack was her testimony and that it lacked credibility. When considering whether there is sufficient evidence to support a conviction, we "view the evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences." See United States v. Carter, 270 F.3d 731,734 (8th Cir. 2001). Reversal is only appropriate if "no reasonable jury could have found [Exson] guilty beyond a reasonable doubt." Id. The standard of review is a strict one, and we do not weigh evidence or assess the credibility of witnesses. See id.; United States v. Eide, 297 F.3d 701, 705 (8th Cir. 2002). "Assessing the credibility of witnesses is a matter properly left to the jury." United States v. Santana, 150 F.3d 860, 864 (8th Cir. 1998). The jury heard testimony from Jirouch about the drug transactions she conducted with Exson, and her testimony was corroborated by Agent Brugman and other undercover officers. The jury found Jirouch and the officers credible, and we conclude that the district court did not err in denying Exson's motion for acquittal based on insufficiency of evidence.

Exson argues that the district court abused its discretion in denying his requests for new counsel because there had been a complete breakdown of communication with his attorney and a potential conflict of interest. He contends he is entitled to a new trial because the district court failed to explore his complaints sufficiently and did not conduct a hearing as required by Caban v. United States, 281 F.3d 778 (8th Cir. 2002). The government responds that the district court gave Exson a full and fair opportunity to present his concerns and appropriately denied his motions after he failed to show substitution of counsel was warranted.

Whether to grant a motion for new counsel is a matter committed to the sound discretion of the district court. See United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992). A defendant must show justifiable dissatisfaction with appointed counsel in order to be granted a substitute. See id. Justifiable dissatisfaction sufficient to

warrant new counsel includes "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." Id. (quoting Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991)). The proper focus in evaluating claims of dissatisfaction with counsel is on the quality of the advocacy, see Wheat v. United States, 486 U.S. 153, 159 (1988), for the right to counsel does not include a right to a "meaningful relationship" with counsel. Swinney, 970 F.2d at 499.

The district court carefully considered Exson's claims of justifiable dissatisfaction and allowed him several opportunities to present his concerns about his attorney. It denied his motion after holding a hearing on January 28, 2002 and finding Exson's allegations inadequate to support substitution of counsel. On February 26, 2002, after Exson had filed a new motion for substitution of counsel alleging conflict of interest, the district court again considered Exson's arguments at a status hearing before denying that motion. Exson raised the issue of counsel again at the beginning of trial, and the court gave him another opportunity to talk about his concerns. Exson complained that his attorney was on friendly terms with the prosecutor, that his counsel had refused to file motions which the court found baseless, and that he was generally dissatisfied. The court denied his request after hearing Exson's arguments in support of his motions. Exson himself contributed to the difficulties about which he complained in that he refused to meet with his appointed attorney or respond to communications from his counsel, and he failed to show that his claims of dissatisfaction or his asserted conflict of interest affected counsel's performance. The district court found no real conflict or breakdown in communication, and we conclude that the district court did not abuse its discretion by declining to grant Exson's motions for new counsel.

Exson contends that the district court abused its discretion by admitting hearsay statements under the coconspirator exception. See Fed. R. Evid. 801(d)(2)(E). He claims that statements made by Jirouch to Agent Brugman were not sufficiently

credible to establish she was involved in a conspiracy with him and were therefore inadmissible. He also contends that Brugman's testimony about his dealings with Jirouch was excludable as evidence of other crimes. See Fed. R. Evid. 404(b). The government argues that the court followed the proper procedure for admitting coconspirator's statements under United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978), and that there was no violation of Rule 404(b) because the evidence was admitted to show identity and plan and because a proper limiting instruction was given.

We review a district court's admission of a coconspirator's statements under Rule 801(d)(2)(E) for an abuse of discretion. See United States v. Frazier, 280 F.3d 835, 848 (8th Cir. 2002). The district court conditionally admitted statements made by Jirouch during the testimony of Agent Brugman and completed the Bell procedure at the close of the government's evidence. The district court explicitly found Jirouch's testimony to be credible, see United States v. Heath, 58 F.3d 1271, 1275 (8th Cir. 1995), and it was corroborated by Agent Brugman and another officer at trial. Because these statements were admissible under Rule 801(d)(2)(1) and the court properly instructed the jury that the earlier transactions with Jirouch were admitted for the limited purpose of showing that Exson had "a particular plan or method" of operating, there was no abuse of discretion in admitting the evidence.

Exson's remaining argument concerns claimed errors in the calculation of his sentence. Exson claims that the district court erred in attributing certain quantities of crack cocaine to him based on Jirouch's testimony about prior transactions not included in the indictment. He contends that Jirouch's testimony lacks sufficient indicia of reliability for the court to consider it for sentencing purposes. See United States Sentencing Commission, Guidelines Manual, § 6A1.3(a) (Nov. 2001) [USSG]; see also United States v. Behler, 14 F.3d 1264, 1273 (8th Cir. 1994). The government argues that the district court was in the best position to judge the reliability of the

evidence, that the court found Jirouch reliable, and that it did not clearly err in calculating the quantity of crack cocaine.

The guidelines permit the district court to approximate the quantity of drugs for sentencing purposes where the amount of drugs seized does not reflect the scale of the offense. See USSG § 2D1.1 comment (n. 12). We review the district court's calculation of drug quantity for clear error and will overturn its determination "only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Gonzalez-Rodriguez, 239 F.3d 948, 953 (8th Cir. 2001) (internal quotation marks omitted). When making its quantity calculation the district court may consider any evidence that "has sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3(a). The reliability of testimony and the related assessment of credibility is in the province of the sentencing judge. See Behler, 14 F.3d at 1273. The district court presided at trial, found Jirouch credible, and based its quantity calculation on the evidence. Its quantity determination is consistent with the evidence and is not clearly erroneous.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.