# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3739

_____

United States of America,        *
                                     *

      Plaintiff/Appellee,    *    Appeal from the United States
                                     *    District Court for the District of
      v.                          *    South Dakota.
                                     *

Freddie Gilbert Greger,     *
                                   *

      Defendant/Appellant.   *

_____

Submitted:  May 14, 2003
       Filed:  August 6, 2003 (corrected August 12, 2003)

_____

Before LOKEN, Chief Judge, BRIGHT, Circuit Judge, and SMITH CAMP[1], District Judge.

_____

SMITH CAMP, District Judge.

Freddie Gilbert Greger was charged with knowingly and intentionally distributing a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  The charge followed a local drug task force investigation that

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska sitting, by designation.

lasted for more than one year.  The investigation included an audio-taped controlled purchase of methamphetamine by Greger from a confidential informant ("CI"), at Greger's home.   The CI, as well as other cooperating individuals, provided information regarding amounts of methamphetamine purchased from Greger on other occasions.   The government disclosed the CI's name before trial.

Greger was convicted following a jury trial.  The district court departed downward from Greger's sentencing guideline range of 210-240 months$^2$ to a range of 151-188 months because the court found that Greger's criminal history category over-represented the seriousness of his criminal history.  See U.S. Sentencing Guidelines Manual § 4A1.3 (2001).  The district court did not award Greger credit for acceptance of responsibility under U.S.S.G. § 3E1.1.  The district court sentenced Greger to 151 months imprisonment. Greger appeals, challenging primarily the extent of the departure, arguing that the district court did not recognize its authority under § 4A1.3 to depart further downward horizontally to a lower criminal history category or vertically in offense level.  Greger also challenges the lack of a downward adjustment for acceptance of responsibility under § 3E1.1, and the imposition of a sentence more severe than those imposed on other defendants viewed by Greger as equally or more culpable.  We conclude that because Greger's offense level and criminal history category were increased by the application of a career offender enhancement under § 4B1.1, the district court did have authority to depart both horizontally and vertically under § 4A1.3, although it was under no obligation to do so.  We remand for resentencing.

_____

[2]Before the career offender enhancement under U.S.S.G. § 4B1.1, Greger's sentencing guideline range was 77-96 months.  The range was based on a total offense level of 24 and criminal history category IV.

## I. Downward Departure

Greger's presentence investigation report ("PSR") included both juvenile adjudications and adult convictions. The adult convictions included two felonies, a 1991 first degree burglary and a 1993 aggravated assault committed when Greger was eighteen and nineteen years old, respectively. Greger's criminal history yielded eight criminal history points, placing him in criminal history category IV. With an offense level of 24, Greger's initial sentencing guideline range was 77-96 months. Because Greger's felonies both qualified as crimes of violence and certain other criteria were met, however, Greger was considered a career offender. As a career offender, Greger's criminal history category was raised to VI, and his offense level to 32. See U.S. Sentencing Guidelines Manual § 4B1.1 (2001). This enhancement yielded a sentencing guideline range of 210-262 months. The statutory twenty-year maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C) narrowed the range to 210-240 months.

At sentencing, Greger moved for a downward departure pursuant to U.S.S.G. §§ 4A1.3 5H1.3, 5H1.4 and 5K2.0 based primarily on the following grounds: over-representation of criminal history by placement in criminal history category VI; physical health; mental health; and the proportionality of his sentence in relation to the sentences imposed on allegedly "more culpable" defendants arrested during the course of the same drug task force investigation.[3]

---

[3]The written motion only refers to § 5K2.0. The brief in support of the motion, however, includes references to the other sentencing guideline sections. In the written motion, Greger also includes "role in the offense" as a ground. The role issue was not discussed in the memorandum or supplemental memorandum filed in support of Greger's motion, nor was it argued at the sentencing hearing or raised before this Court.

The district court relied on the issue of over-representation of criminal history in departing downward from criminal history category VI to category III, noting in particular Greger's young age when he committed the qualifying offenses.[4] Specifically, the district court found the facts underlying Greger's two prior felonies insufficient to justify a career offender status. (Sentencing Tr. at 27.) In so ruling, the district judge stated:

> It is the view of the Court that making the downward departure based on the fact that his two crimes of violence over represent the seriousness of his past criminal conduct, it is the view of the Court that I can reduce the criminal history category on that basis. *It is my view that I cannot reduce the total offense level based on that*, and I will make that record so that if the appellate court disagrees with that position, they can tell me. I do feel based on the record in this case with regard to the sentences given to the offenders arrested at the same time as Mr. Greger, which the most severe, the most serious of which was 80 months, it is my personal view that a sentence of 120 or 121 months would be better than the sentence I am going to impose, but *the Court feels that I am unable to do that to go to that level*.

(Id. at 30-31 (emphasis added).)

The district court's statement of reasons reiterated the reasons stated orally on the record:

> [T]he defendant's prior convictions over-represent the seriousness of his prior criminal history, pursuant to USSG § 4A1.3, and defendant's criminal history is significantly less serious than that of most defendants

---

[4]The district judge did not base his departure decision on the grounds of physical or mental health or indicate whether he had the authority to depart downward on those bases. These issues should be addressed by the district court on remand.

in Category VI. The crimes that qualify as crimes of violence for career offender purposes were committed when defendant was young, ages [18] and 19. The burglary conviction did not involve breaking and entering or any other form of violence against persons or property. Accordingly, the defendant's criminal history is reduced from a category VI to a category III with a guideline range of 151 to 188 months.

(Statement of Reasons, at 2.)

Greger argues that the district judge erred in determining that he lacked the authority to depart further, either horizontally to a lower criminal history category or vertically by offense level within category III. The government responds that the district court was correct in finding that it lacked authority to depart further and, therefore, Greger's argument may not be addressed on appeal.

We have jurisdiction to review a district court's decision not to depart downward when the decision that the court lacked authority to consider a mitigating factor is legally erroneous. *United States v. Causor-Serrato,* 234 F.3d 384, 391 (8th Cir. 2000); *United States v. Navarro,* 218 F.3d 895, 897 (8th Cir. 2000). "'The district court's interpretation of the sentencing guidelines is a question of law subject to de novo review, while its factual determinations are subject to review only for clear error.'" *United States v. Auginash,* 266 F.3d 781, 785 (8th Cir. 2001) (quoting *United States v. Larson,* 110 F.3d 620, 627 (8th Cir.1997)).

A district court must impose a sentence within the applicable guideline range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). A court may depart from the applicable sentencing guideline range when "the criminal history category does not adequately

reflect the seriousness of the defendant's past criminal conduct." U.S.S.G. § 4A1.3. A downward departure may be appropriate when a defendant's criminal history is "significantly less serious than that of most defendants in the same criminal history category." *Id.* The Sentencing Commission directed that courts then "consider a downward departure" and "use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." *Id.* The Sentencing Commission used an example of an upward departure to illustrate the method to be used in departing:

> For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the seriousness of the defendant's criminal history most closely resembles that of most defendants with Criminal History Category IV, the court should look to the guideline range specified for a defendant with Criminal History Category IV to guide its departure. The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a departure above the guideline range for a defendant with Criminal History Category VI may be warranted. . . . Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

> However, this provision is not symmetrical. The lower limit of the range for Criminal History Category I is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate.

*Id.* (emphasis added).

Generally, § 4A1.3 downward departures follow the Sentencing Commission's example of a horizontal departure. *See, e.g., United States v. Hall,* 7 F.3d 1394, 1396 (8th Cir. 1993). A career offender designation distinguishes a case from the general realm of § 4A1.3 downward departures, however. This Court has recognized that a downward departure under § 4A1.3 may be appropriate in situations involving defendants found to be career offenders under § 4B1.1. *See, e.g., United States v. Gayles,* 1 F.3d 735, 739 (8th Cir. 1993); *United States v. Brown,* 903 F.2d 540, 545 (8th Cir. 1990). And in *United States v. Senior,* 935 F.2d 149 (8th Cir. 1991), this Court considered the reasonableness of a downward departure from the career offender guideline range to the range that would have applied without the career offender enhancements. *Id.* at 151. In affirming the departure, which included both a horizontal and vertical departure, the *Senior* panel found the departure reasonable after considering the defendant's criminal history, including: the defendant's age when he committed the qualifying offenses; the time span between the qualifying and instant offenses; and the state's assessment of the seriousness of the qualifying offenses reflected by the sentences imposed and length of time actually served. *Id.* A departure in both criminal history category and offense level was found to satisfy the instruction in § 4A1.3 to "'use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable.'" *Id.* (quoting § 4A1.3).

Departure in both criminal history category and offense level for over-representation of criminal history in cases involving career offenders is approved by a majority of the circuit courts of appeals. *See, e.g., United States v. Lindia,* 82 F.3d 1154, 1165 (1st Cir. 1996) (referring to a departure from the "career offender category"); *United States v. Rivers,* 50 F.3d 1126, 1130 (2d Cir. 1995) (stating that

criminal history category, offense level, or both may be reduced in a career offender situation); *United States v. Shoupe,* 35 F.3d 835, 838 (3d Cir. 1994) (stating that in the career offender context, a § 4A1.3 downward departure is not limited to the criminal history category, but is also permitted in the offense level); *United States v. Adkins,* 937 F.2d 947, 952 (4th Cir. 1991) (allowing for a downward departure from "career offender status"); *United States v. Fletcher,* 15 F.3d 553, 557 (6th Cir. 1994) (affirming a § 4A1.3 downward departure in criminal history category and offense level); *United States v. Reyes,* 8 F.3d 1379, 1388-89 (9th Cir. 1993) (stating that, in a career offender context, § 4A1.3 does not preclude a downward departure from the base offense level); *United States v. Bowser,* 941 F.2d 1019, 1026 (10th Cir. 1991) (affirming a sentence in the guideline range computed before the application of § 4B1.1, acknowledging that the career offender "jump" was initially made in a single "step"); *United States v. Clark,* 8 F.3d 839, 846 (D.C. Cir. 1993) (stating that the district court properly exercised its discretion in sentencing the defendant within the original guideline range that applied before the career offender enhancement). The United States Court of Appeals for the Eleventh Circuit is alone in disagreeing with the majority of circuit courts, stating that "§ 4A1.3 departures must proceed on only the horizontal axis and not the vertical axis." *United States v. Smith,* 289 F.3d 696, 711 (11th Cir. 2002).

A primary consideration in allowing § 4A1.3 downward departures in both criminal history category and offense level when a defendant has received a career offender enhancement is the fact that career offender status raises the defendant's placement on both axes of the sentencing table--criminal history category and offense level. *Rivers,* 50 F.3d at 1130; *Shoupe,* 35 F.3d at 838. Accordingly, a downward departure should have the potential to address, within a district court's discretion, both consequences of the career offender enhancement.

Also, when § 4A1.3 is read together with § 5K2.0, a career offender may be found to be outside the heartland of career offenders based on mitigating details of a particular criminal history. *See United States v. Smith,* 909 F.2d 1164, 1169 (8th Cir. 1990). "[A]ll careers are not the same. The length and scope of the career that lands the criminal under the career-offender guideline are appropriate grounds for departure, either upward or downward, in an unusual case." *Id.* (citing 18 U.S.C. § 3553(b); U.S. Sentencing Guidelines Manual § 5K2.0 (2001)).

We hold that the district court has the authority to depart downward under § 4A1.3 both horizontally in criminal history category and vertically in offense level from Greger's sentencing guideline range, which was enhanced under § 4B1.1 due to his career offender status. Any downward departure in offense level should not result in a lower offense level than was designated before the career offender adjustment – in Greger's case, level 24, subject to our comment in footnote 4. A departure within both axes of the sentencing table may, within the district court's discretion, compensate Greger fully for any over-representation of his criminal history due to his career offender status. We do not determine or suggest whether any further departure is appropriate.

## II. Acceptance of Responsibility

Greger argues that the district court erred in denying him a downward adjustment in his offense level for acceptance of responsibility. While a sentencing court's interpretation of the guidelines is reviewed de novo, we review the district court's factual findings regarding acceptance of responsibility for clear error. *United States v. Boettger,* 316 F.3d 816, 817 (8th Cir. 2003); *United States v. Calderon-Avila,* 322 F.3d 505, 507 (8th Cir. 2003). Because the district court was in a unique position to evaluate Greger's qualifications for an award of acceptance of responsibility, the district court's decision in this matter is given "great deference." U.S. Sentencing Guidelines Manual § 4A1.3 app. n. 5 (2001); *Boettger,* 316 F.3d at 817; *Calderon-*

*Avila,* 322 F.3d at 507. The district court's findings may only be reversed if they are so clearly erroneous that they are without foundation. *Boettger,* 316 F.3d at 817.

The commentary to § 3E1.1 provides that a district court's decision whether to allow a two-level reduction in offense level for acceptance of responsibility should follow consideration of an unlimited list of factors, including whether a defendant has:

> truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.

U.S. Sentencing Guidelines Manual § 3E1.1, app. n. 1(a) (2001).

The commentary to § 3E1.1 states that credit for acceptance of responsibility may be granted when a defendant goes to trial without denying the factual elements of guilt. For example, the adjustment may apply if a defendant clearly demonstrates acceptance of responsibility despite going to trial and challenges issues unrelated to factual guilt, e.g., the constitutionality of a statute. U.S. Sentencing Guidelines Manual § 3E1.1 (2001).

In Greger's case, the parties differ in their opinions as to why Greger went to trial. The record contains evidence that Greger went to trial because he was unsure whether or not the CI would testify, and, if the CI did testify, Greger wanted to ensure that the CI would no longer be of use to law enforcement.

-10-

A review of the trial transcript shows that Greger challenged the essential elements of the offense. When a defendant contests his factual guilt at trial, "it is only the rare case where his pretrial statements and conduct nonetheless demonstrate acceptance of responsibility." *United States v. Montano-Gudino,* 309 F.3d 501, 505 (8th Cir. 2002). *See also* U.S. Sentencing Guidelines Manual § 3E1.1 app. n. 2 (2001) (stating that where a defendant goes to trial and challenges issues not related to factual guilt, the decision regarding acceptance of responsibility is made "primarily upon pre-trial statements and conduct"). Greger also contested relevant conduct which the district court found to be true – sales of additional quantities of drugs. Greger, therefore, acted "in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 app. n. 1(a). *See also United States v. Honken,* 184 F.3d 961, 972-73 (8th Cir. 1999) (declining to award credit under § 3E1.1, where the defendant minimally accepted responsibility by, among other things, denying relevant conduct).

We conclude that the district court did not clearly err in denying Greger a reduction under § 3E1.1 for acceptance of responsibility.

### III. Proportionality of Sentence

Greger's PSR lists five pending related cases that stemmed from the same investigation. Of those five defendants, two had not yet been sentenced at the time of Greger's sentencing, and three had been sentenced to the following terms: seventy months imprisonment; thirty-seven months imprisonment; and five months imprisonment to be followed by five months community confinement and home detention. The defendants sentenced to seventy months and to five months provided information to the government about their methamphetamine purchases from Greger.

Greger argues that his sentence was disproportionate to those of the other defendants charged as a result of the same drug task force investigation and, therefore,

his sentence violates the Eighth and Fourteenth Amendments to the United States Constitution. We review allegations of variation among sentences for abuse of discretion. *United States v. Thompson,* 51 F.3d 122, 126 (8th Cir. 1995). To prove an Eighth Amendment violation, Greger must show that his sentence was grossly disproportionate to the crime of knowingly and intentionally distributing methamphetamine by a career offender. *United States v. Prior,* 107 F.3d 654, 659-60 (8th Cir. 1997). *See also Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991) (stating that successful challenges to the proportionality of sentences on Eighth Amendment grounds are rare).

Greger has only raised general arguments regarding the other allegedly similarly situated defendants, without discussing the perceived differences among the various cases. Greger ignores the cooperation provided by two defendants that assisted authorities in Greger's case and the likelihood that those defendants received downward departures for substantial assistance. Greger also fails to note that he is a career offender, while the other defendants do not fall under § 4B1.1. Greger has failed to show an abuse of discretion, that his sentence was grossly disproportionate to his crime (particularly given his status as a career offender), or a due process violation.

We conclude that Greger's sentence was not an abuse of discretion and does not violate the Eighth or Fourteenth Amendments.

## IV. Conclusion

This case is remanded to the district court for resentencing in accordance with this opinion to determine whether any additional downward departure is warranted. The downward departure issues are the only issues remanded to the district court. The district court's actions in all other respects are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.